UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SHERRY J. CAPPS, *et al.*,  )
 )
 Plaintiffs,  )
 )
v.  ) No.: 3:12-CV-545-TAV-HBG
 )
CREMATION OPTIONS, INC., *et al.*,  )
 )
 Defendants.  )

## MEMORANDUM OPINION

This civil action is before the Court on the motion for summary judgment filed by defendants Rhonda L. Barnes, James R. Barnes, Joseph A. Crumley, Steven R. Crumley, and Pauline Rhodes (the "Family Defendants") [Doc. 20] and defendant Cremation Options, Inc. ("Cremation Options") [Doc. 37]. Plaintiffs responded in opposition to both motions and moved the Court pursuant to Federal Rule of Civil Procedure 56(d) to defer or deny the motions to allow plaintiffs to obtain affidavits and conduct discovery essential to their opposition to the motions [Docs. 29, 40]. Cremation Options filed a reply [Doc. 43] and renewed its motion for summary judgment [Doc. 49] after plaintiffs filed an amended complaint [Doc. 46].[1] For the reasons stated herein, the Court will

---

[1] The Court finds that the filing of the amended complaint should not moot the pending motions for summary judgment because the causes of action in the amended complaint are substantially identical to those in the original complaint [Doc. 1], and thus the Court will address the merits of the motion for summary judgment. *See Graham v. City of Oklahoma City*, 859 F.2d 142, 144–45 (10th Cir. 1988) (initial motion for summary judgment properly granted where original complaint and amended complaint were "substantially identical" and plaintiff had "adequate notice and sufficient opportunity to meet defendants' arguments contained in the initial motion for summary judgment" (footnote omitted)). In fact, the amended complaint merely removed Angela Crumley as a defendant and plaintiffs' cause of action for conversion of estate assets [*Compare* Doc. 1 *with* Doc. 46].

grant Cremation Options' motion and defer ruling on the Family Defendants' motion until after plaintiff has received the discovery sought from the Family Defendants.

I.  **Background**

Plaintiffs Sherry Capps, Charlotte DelGaicco, and Brian Pierce are the biological children of Richard A. Pierce, Jr. ("the decedent"), who died on October 23, 2011, in Sevier County, Tennessee [Doc. 38 p. 1]. Defendants Rhonda Barnes, Joseph Crumley, and Steven Crumley are stepchildren of the decedent, defendant James Barnes is the husband of Rhonda Barnes, and defendant Pauline Rhodes is the decedent's sister [Doc. 46 ¶ 17]. The Family Defendants allege that after being admitted to LeConte Medical Center on October 13, 2011, the decedent executed "Appointment of Health Care Agent" and "Advance Care Plan" forms, which were provided by social worker Elizabeth Robinson [Doc. 23 ¶ 6]. On these forms, Rhonda Barnes is listed as the person designated by the decedent to make health care decisions on his behalf once he is unable to do so, and the forms were purportedly signed by the decedent on October 13, 2011 [Doc. 26 pp. 3–5]. These forms are notarized [*Id.*]. According to the Family Defendants, the decedent reviewed these forms and discussed his intentions with Rhonda Barnes and Pauline Rhodes before signing them [Docs. 23 ¶ 6, 24 ¶ 4].

On the Advance Care Plan form, under the section entitled "[o]ther instructions, such as burial arrangements, hospice care, etc.," the word "creamation" [sic] is written [*Id.* at 4]. Plaintiffs Sherry J. Capps and Charlotte P. DelGaicco aver that, based on their familiarity with the decedent's handwriting, he did not write the word "creamation" [sic]

[Doc. 33 ¶ 3; Doc. 35 ¶ 3]. Moreover, they submit that the decedent never indicated to them his desire to be cremated [Doc. 33 ¶ 4; Doc. 35 ¶ 7].

On October 21, 2013, Rhonda Barnes signed a form in place of the decedent, who was apparently unable to do so, using her maiden name, Rhonda Crumley, and identifying herself as the decedent's "daughter" [Doc. 34 pp. 2–3]. This form indicated that the decedent did not have an "Advance Directive" [*Id.* at 2]. On the day after the decedent's death, an employee of LeConte Medical Center told Sherry Capps that there was no advance care directive on file for the decedent [Doc. 35 ¶ 8]. Yet, the aforementioned Advance Care Plan form was later produced from the records of LeConte Medical Center [Doc. 26 pp. 3–4].

On October 24, 2011, Jarrett Vance ("Vance"), who was then an employee of Cremation Options, was dispatched to an address in Sevier County, Tennessee, where he met with Rhonda Barnes, Steven Crumley, and Joseph Crumley [Doc. 37-6 ¶¶ 2–3]. Vance avers that during this meeting, Rhonda Barnes told him that she was the decedent's daughter, and Steven and Joseph Crumley told him that they were the decedent's sons [*Id.* ¶ 4]. Further, when Vance inquired as to whether there were any other siblings, Rhonda Barnes, Steven Crumley, and Joseph Crumley replied that there were not [*Id.*].

Moreover, during this meeting with Vance, Rhonda Barnes, Steven Crumley, and Joseph Crumley signed two documents authorizing Cremation Options to arrange for the cremation of the decedent [*Id.* ¶ 5, Doc. 37-2]. In the first document, titled "Cremation and Disposition Authorization," these three defendants averred that: (1) they "are legally

3

authorized to arrange for the cremation, processing, and final disposition of the remains of [the decedent]," (2) "all of the Decedent's other adult children have been notified of the decedent's death and none of them have expressed an objection to the cremation," (3) "I/We are aware of no objection to this cremation by any . . . child . . . or any person in the next degree of kinship to the Decedent," (4) "I/We . . . certify that I/We have the legal right to make [the cremation] authorization and agrees to hold Cremation Options, Inc. . . . harmless . . . from any liability on account of said authorization, cremation, identification, and final disposition," and (5) the obligations of Cremations Options shall be fulfilled when the decedent's remains are delivered to Rhonda Barnes [Doc. 37-2]. Plaintiffs were not present when this document was signed, and the president of Cremation Options, James Safewright, was not aware of their existence at that time [Doc. 37-1 ¶ 5].

The second document addresses the policies and procedures of East Tennessee Cremation Company, to which Cremation Options delegated the task of cremating the decedent [Doc. 37-4]. After the cremation had been completed, East Tennessee Cremation Company was to deliver the decedent's remains to Cremation Options, who was to deliver them to Rhonda Barnes in accordance with the Cremation and Disposition Authorization [*Id.* at 4]. On October 24, 2011, in accordance with a cremation permit obtained from the state of Tennessee, the decedent was cremated [Doc. 37-1 ¶ 9]. On October 25, 2011, James Barnes executed one of the decedent's checks to Cremation Options in the amount of $1,542.79, presumably as payment for the decedent's cremation

4

[Doc. 34 p. 5]. Finally, as authorized by Charlotte DelGaicco[2] and Rhonda Barnes, Cremation Options released half of the decedent's cremated remains to each of them [Doc. 37-1 ¶ 10]. Both Charlotte DelGaicco and Rhonda Barnes signed forms acknowledging this release on October 25, 2011 [Doc. 37-5].

Plaintiffs allege that the defendants are liable under Tennessee law for intentional infliction of emotional distress, negligent infliction of emotional distress, trespass upon the right to possess body for decent burial, and conversion of cremated remains [Doc. 46]. The Family Defendants argue that the Appointment of Health Care Agent and Advance Care Plan designated cremation as the decedent's preferred method of disposal of his body and granted Rhonda Barnes the right to control the decedent's disposition [Doc. 21 pp. 2–4]. And, because she acted in accordance with the decedent's purported wishes and with the authority granted to her by the decedent, the Family Defendants submit that they are entitled to summary judgment. James R. Barnes and Pauline Rhodes submit that they are also entitled to summary judgment because they did not sign any agreement or contract for the decedent's cremation [*Id.* at 4–5].[3]

Cremation Options contends that it is entitled to summary judgment under Tennessee law because it had the right to rely on the contract into which it entered with Rhonda Barnes, Joseph Crumley, and Steven Crumley and acted at all times in good faith

---

[2] This authorization was given on October 25, 2011, one day after the decedent was cremated [Doc. 37-5].

[3] Angela Crumley was also listed in this document as a party entitled to judgment because she did not sign any documents pertaining to the decedent's cremation, but in plaintiffs' amended complaint, Angela Crumley is no longer a defendant to this action [Doc. 46].

5

based upon its reasonable reliance on the representations of Rhonda Barnes, Joseph Crumley, and Steven Crumley [Doc. 37 ¶¶ 2–3]. Alternatively, Cremation Options asserts the validity of the Advance Care Plan form, wherein the decedent purportedly memorializes his desire to be cremated [*Id.* ¶ 1].

Regarding the Family Defendants' motion, plaintiffs submit that genuine issues of material fact exist as to the genuineness and validity of the documents allegedly executed by the decedent that indicate his desire that his body be cremated [Doc. 30 p. 3]. More specifically, plaintiffs submit that "the observable dissimilarity in handwriting of the word 'creamation' and the handwritten portions of the other parts of the Advance Care Plan raises a genuine issue of material fact" as to whether the decedent completed that portion of the form and aver that the decedent never indicated to them his desire to be cremated [*Id.*]. In addition, both Rhonda Barnes and LeConte Medical Center denied the existence of an advance care directive after this form had purportedly been executed [*Id.*].

Moreover, plaintiffs contend that the fact that neither James Barnes nor Pauline Rhodes signed any agreement or contract concerning the decedent's cremation is not determinative of their allegations against these two defendants [*Id.* at 2]. To this end, these defendants may have conspired orally to cremate the decedent's remains and, notably, James Barnes signed the check to Cremation Options, and Pauline Rhodes was with the decedent when he purportedly executed to the Advance Care Plan form and avers that she discussed this form with the decedent before he did so.

6

As for Cremation Options, plaintiffs submit that (1) the dissimilar handwriting on the Advance Care Plan and (2) Stephen Crumley's description of himself as the decedent's "step-son" on one of Cremation Options' forms and "son" on another, coupled with the difference in surnames between the decedent and Crumley males, as well as the fact that the individuals labeled "son" and "step-son" have the same surname, create a genuine issue of material fact as to the reasonableness of Cremation Options' reliance on these documents and defendants' representations [Doc. 41 pp. 1–2].

Alternatively, plaintiffs move the Court pursuant to Rule 56(d) of the Federal Rules of Civil Procedure to defer or deny defendants' motions until plaintiffs can obtain affidavits and conduct discovery as to facts essential to justify their opposition to defendants' motions [Docs. 29 pp. 2–3, 40 p. 2]. In support, plaintiffs' counsel avers that discovery will allow plaintiffs to obtain information from, and depose, all defendants in order to learn their involvement in the cremation decision and the decision to halve and distribute the decedent's remains [Doc. 29 p. 4]. Moreover, plaintiffs' counsel submits that he will depose and request documents from non-defendant health care providers of the decedent to determine the decedent's mental state and competence when he purportedly signed the forms at issue and will subpoena the production of handwriting exemplars of the decedent for expert analysis to determine the extent to which the decedent executed such forms. Plaintiffs' counsel states that the parties' discovery plan contemplates the completion of discovery on or before January 14, 2014.

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or

8

determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

In addition, when a summary judgment motion is filed, the party opposing the motion may, by affidavit under Rule 56(d) (formerly Rule 56(f)), explain why he or she is unable to present facts essential to justify the party's opposition to the motion. *See Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003). The Rule provides in pertinent part:

> **(d) When Facts Are Unavailable to the Nonmovant.**
>
> > If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its position, the court may:
> >
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

"Before ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case." *Plott v.*

*Gen. Motors Corp.*, 71 F.3d 1190, 1195 (6th Cir. 1995). However, the party seeking the additional discovery bears the burden of "demonstrat[ing] why such discovery is necessary." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Bare allegations or vague assertions of the need for additional time for discovery are not enough. *United States v. Cantrell*, 92 F. Supp. 2d 704, 717 (S.D. Ohio 2000) (citing *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998)). The Sixth Circuit has found that a party must make such a request with "some precision" and must state "'the materials he hopes to obtain with further discovery and exactly how he expects those materials would help him in opposing summary judgment.'" *Summers*, 368 F.3d at 887 (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)); *see also Cacevic v. City of Hazel Park*, 226 F.3d 483, 489 (6th Cir. 2000) (noting that a party making a filing under Rule 56(f) must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information" (internal quotations omitted)). The nonmoving party "must show how postponement of a ruling on the motion will enable him to rebut the motion for summary judgment." *Lyons v. Ray*, No. 5:05-405-JMH, 2007 WL 679005, at *4 (E.D. Ky. March 1, 2007) (quoting *Lewis*, 135 F.3d at 409).

The Sixth Circuit has stated that five factors should be considered when ruling on a Rule 56(d) motion:

> (1) when the party seeking discovery learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the ruling; (3) how long the discovery period lasted; (4) whether the party seeking discovery was dilatory in its discovery

efforts; and (5) whether the non-moving party was responsive to discovery requests.

*HCA-Info. Tech. & Servs., Inc. v. Informatica Corp.*, No. 3:10-CV-01155, 2011 WL 5117727, at *2 (M.D. Tenn. Oct. 25, 2011) (citing *Plott v. Gen. Motors Corp.,* 71 F.3d 1190, 1196–97 (6th Cir. 1995)).

**III. Analysis**

    **1. Family Defendants**

Plaintiffs' Rule 56(d) motion is accompanied by a declaration in which counsel for plaintiffs states that he cannot present facts essential to justify plaintiffs' opposition to the Family Defendant's motion for summary judgment. Namely, he submits that discovery, including interrogatories, requests for production, subpoenas, and depositions, would likely reveal pertinent facts concerning: (1) "the precise involvement of each defendant in the decision to cremate the decedent's remains;" (2) "the precise involvement of each defendant in the decision to halve and distribute the cremated remains;" (3) "the mental state and competence of the decedent on or about the time that he allegedly executed various documents relied upon by the defendants;" and (4) "handwriting exemplars of the decedent . . . to determine the extent to which the decedent may have filled out or executed various documents relied upon by the defendants" [Doc. 29 p. 4].

The Court finds that this information is essential to plaintiffs' opposition to the Family Defendants' motion for summary judgment [Doc. 20]. The declaration of plaintiffs' counsel is sufficiently precise in describing the information that plaintiffs seek through discovery, and plaintiffs note in their supporting memorandum that this

11

information could be determinative of the Court's ruling on the Family Defendants' motion, making it essential to justify their opposition to the motion [Doc. 30 p. 4]. To this end, such discovery will allow plaintiffs to adequately address the involvement of each Family Defendant in the decedent's decision-making process regarding the handling and disposition of his body following his death and the validity of the Family Defendants' assertions that the decedent voluntarily elected, while of sound mind, (1) that his body be cremated and (2) that Rhonda Barnes control the disposition of his remains. Furthermore, given that discovery had yet to begin when plaintiffs filed their motion, as well as the aforementioned potential of the sought discovery to change the Court's ruling on the Family Defendants' motion for summary judgment, the first, second, and third factors of the Sixth Circuit's five-factor test weigh in favor of granting plaintiffs' motion, and the fourth and fifth factors are inapplicable. *Thomason v. Amalgamated Local No. 863*, 438 F. App'x 358, 361 (6th Cir. 2011). Therefore, plaintiffs' Rule 56(d) motion as to the Family Defendants will be granted, and consideration of the Family Defendants' motion for summary judgment will be deferred pursuant to Rule 56(d).

### 2. Cremation Options

In Tennessee:

> Any person signing a funeral service agreement, cremation authorization form, or any other authorization for disposition shall be deemed to warrant the truthfulness of any facts set forth therein, including the identity of the decedent whose remains are to be buried, cremated, or otherwise disposed of, and the party's authority to order such disposition. A funeral establishment shall have the right to rely on such funeral service contract or authorization and shall have the authority to carry out the instructions of the person whom the funeral establishment reasonably believes holds the right

> of disposition. No funeral establishment is responsible for contacting or independently investigating the existence of any next-of-kin or relative of the decedent.

Tenn. Code Ann. § 62-5-707. Moreover,

> No funeral establishment or funeral director who relies reasonably in good faith upon the instructions of a person claiming the right of disposition shall be subject to criminal or civil liability or subject to disciplinary action for carrying out the disposition of the remains in accordance with the instructions unless the funeral establishment or funeral director knew or had reason to know that the person did not have the right of disposition.

Tenn. Code Ann. § 62-5-708.

In this case, Vance, an employee of Cremation Options, has stated that Rhonda Barnes, Steven Crumley, and Joseph Crumley told him that they were the children of the decedent and that no other siblings existed [Doc. 37-6 ¶ 4]. Then, these three defendants signed a Cremation and Disposition Authorization in which they (1) instructed Cremation Options to arrange for the cremation of the decedent, (2) stated that all of the decedent's children had been notified of the decedent's death and that they knew of no objection to cremation by any of his children, (3) averred that they had the legal right to authorize the decedent's cremation, and (4) agreed to hold Cremation Options harmless from any liability stemming from their authorization or the cremation, identification, and disposition of the decedent [Doc. 37-2]. Moreover, the president of Cremation Options, Safewright, states that he relied on the representations of Rhonda Barnes, Steven Crumley, and Joesph Crumley in arranging for the cremation to be performed on October 24, 2011, and did not know of the existence of plaintiffs at that time [Doc. 37-1 ¶ 5, 11]. After the decedent's cremation, with the authorization of Charlotte DelGaicco and

13

Rhonda Barnes, Cremation Options released half of the decedent's cremated remains to each of them [Doc. 37-5].

Under Tennessee law, Rhonda Barnes, Steven Crumley, and Joseph Crumley were deemed to warrant the truthfulness of the statements made in the Cremation and Disposition Authorization, including that they possessed the authority to order the decedent's cremation, and Cremation Options had the right to rely on such statements. Moreover, Cremation Options was legally authorized to carry out the instructions of a person whom it reasonably believed held the right of disposition. Tenn. Code Ann. § 62-5-707. Here, the affidavits of Safewright and Vance, along with the documents signed by Rhonda Barnes, Steven Crumley, and Joesph Crumley, warrant that these three individuals had the authority to order the decedent's cremation and support Cremation Options contention that it reasonably believed that these individuals held the right of disposition. Furthermore, though plaintiffs argue that the fact that Steven Crumley identified himself as a step-son on one of Cremation Options' forms creates a genuine issue of material fact as to the reasonableness of Cremation Options' belief, "[n]o funeral establishment is responsible for contacting or independently investigating the existence of any next-of-kin or relative of the decedent." *Id.*

Additionally, plaintiffs submit that the observable dissimilarity on the Advance Care Plan form of the word "creamation" [sic] from the rest of the words on the form creates a genuine issue of material fact as to whether Cremation Options reasonably relied on such documentation, or reasonably believed that Rhonda Barnes, Steven Crumley, and Joseph Crumley had the authority to order the decedent's cremation.

14

Given the aforementioned facts and law, investigating the validity of a word on the Advance Care Plan form is beyond what is required of Cremation Options in light of the oral and written representations by Rhonda Barnes, Steven Crumley, and Joseph Crumley.

To this end, if a funeral establishment "relies reasonably in good faith upon the instructions of a person claiming the right of disposition," that establishment cannot be held liable for carrying out the cremation and disposition in accordance with that person's instructions "unless the funeral establishment or funeral director knew or had reason to know that the person did not have the right of disposition." Tenn. Code Ann. § 62-5-708. Here, the representations made by Rhonda Barnes, Steven Crumley, and Joseph Crumley, along with the affidavits of Safewright and Vance, indicate that Cremation Options reasonably relied in good faith on the instructions of these three defendants and had no reason to know that they did not possess the right of disposition, if they in fact did not. Moreover, as mentioned, Cremation Options was under no duty to independently investigate the representations of these three defendants. Accordingly, based on the record before the Court and the applicable law, there is no genuine issue of material fact as to whether Cremation Options is liable to plaintiffs.

Yet, plaintiffs contend that pursuant to Federal Rule of Civil Procedure 56(d), they need discovery to obtain facts essential to their opposition to Cremation Options' motion. But in plaintiffs' counsel's declaration in support of this argument, the examples of necessary discovery bear upon the validity of the decedent's alleged wish that he be cremated, except for the information concerning the involvement of defendants in the

15

decision to halve and distribute the decedent's cremated remains.[4] The validity of the decedent's intentions is relevant to plaintiffs' opposition to the Family Defendants' motion for summary judgment, but not that of Cremation Options, which can be disposed of based on the validity of Cremation Options' reliance upon the statements of the Family Defendants under Tennessee law, rather than the actual intentions of the decedent.

In addition, as for the discovery sought pertaining to the decision to halve and distribute the decedent's remains, Charlotte DelGaicco and Rhonda Barnes signed forms authorizing Cremation Options to distribute half of the decedent's remains to each of them. More fundamentally, plaintiffs have not provided evidence or made specific allegations probative of any impropriety on the part of Cremation Options with regard to this distribution of the decedent's remains or described with any specificity how the information plaintiffs seek through discovery on this point would help, much less prove essential, to plaintiffs' opposition to Cremation Options' motion for summary judgment.

The Sixth Circuit has stated that when ruling on a Rule 56(d) motion, courts should consider:

> (1) when the party seeking discovery learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the ruling; (3) how long the discovery period lasted; (4) whether the party seeking discovery was dilatory in its discovery efforts; and (5) whether the non-moving party was responsive to discovery requests.

---

[4] As mentioned, in addition to information concerning the involvement of defendants in the decision to halve and distribute the decedent's remains, plaintiffs seek information pertaining to the involvement of each defendant in the decision to cremate the decedent's remains, information concerning the decedent's mental state and competence when he executed documents relied upon by defendants, and handwriting exemplars of the decedent to determine the extent to which he executed such documents.

*HCA-Info. Tech. & Servs., Inc.*, 2011 WL 5117727, at *2 (citing *Plott*, 71 F.3d at 1196–97). Plaintiffs are correct in stating that because discovery had yet to begin when plaintiffs filed their Rule 56(d) motion, the first and third factors militate in favor of the motion, and the fourth and fifth factors are inapplicable. The second factor, however, weighs strongly in favor of denying the motion because plaintiffs have failed to specifically state how the sought discovery would change the Court's ruling on Cremation Options' motion. Put simply, bare allegations or vague assertions of the need for additional time for discovery are not enough. *Cantrell*, 92 F. Supp. 2d at 717 (citing *Lewis*, 135 F.3d at 409). Instead, a party must make such a request with "some precision" and must state "'the materials he hopes to obtain with further discovery and exactly how he expects those materials would help him in opposing summary judgment.'" *Summers*, 368 F.3d at 887 (quoting *Simmons Oil Corp.*, 86 F.3d at 1144). Given plaintiffs' failure to state with specificity how the sought materials are germane to their opposition to Cremation Options' motion for summary judgment, the Court finds that, on balance, the *Plott* factors and other applicable case law do not weigh in favor of granting plaintiffs' Rule 56(d) motion.

Having considered the current record, the written representations of Rhonda Barnes, Steven Crumley, and Joseph Crumley, and the applicable law, the Court finds that the discovery sought by plaintiffs is too vaguely related to plaintiffs' opposition to Cremation Options' motion. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) ("It is not an abuse of discretion for the district court to deny the discovery
17

request when the party makes only general and conclusory statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [document] to be discovered.") (alterations in original) (citations and internal quotation marks omitted). Plaintiffs support their Rule 56(d) motion by stating that "clearly the proposed discovery set forth in the declaration of the undersigned has the potential to change any potential ruling on the motion" [Doc. 41 p. 4]. This general and conclusory statement does not provide adequate support for plaintiffs' motion, considering that the proposed discovery does not "clearly" have such potential [*Id.*]. Accordingly, the Court will deny plaintiffs' Rule 56(d) motion as to Cremation Options and now finds that there is no genuine issue of material fact as to plaintiffs' claims against Cremation Options. Thus, the Court will grant Cremation Options' motion for summary judgment.

**IV.    Conclusion**

For the reasons stated herein, Cremation Options' motion for summary judgment [Docs. 37, 49] will be **GRANTED**, and plaintiffs' claims against Cremation Options will be **DISMISSED**. Plaintiffs' Rule 56(d) motion as to Cremation Options [Doc. 40] will be **DENIED**. In addition, for good cause shown, plaintiffs' Rule 56(d) motion as to the Family Defendants [Doc. 29] will be **GRANTED**, and consideration of the Family Defendants' motion for summary judgment [Doc. 20] will be **DEFERRED** pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. In light of the representation by plaintiffs' counsel that discovery is to conclude on or before January 14, 2014, it will be **ORDERED** that plaintiffs shall have until and including **January 28, 2014**, to file a

18

supplemental brief to their response to the Family Defendants' motion, and the Family Defendants shall have **seven (7) days** from the filing of plaintiff's supplemental brief to file a supplemental brief in reply. Plaintiffs' failure to file a supplemental brief will result in the Court's determination of the Family Defendants' motion based upon the record before the Court.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE