UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SHERRY J. CAPPS, )
CHARLOTTE P. DELGAICCO, and )
BRIAN D. PIERCE, )
 )
      Plaintiffs, )
 )
v. ) No.: 3:12-CV-545-TAV-HBG
 )
RHONDA L. BARNES, )
JAMES R. BARNES, )
JOSEPH A. CRUMLEY, )
STEVEN R. CRUMLEY, and )
PAULINE RHODES, )
 )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on the motion for summary judgment filed by defendants Rhonda L. Barnes, James R. Barnes, Joseph A. Crumley, Steven R. Crumley, and Pauline Rhodes ("defendants") [Doc. 20].[1] Plaintiffs responded in opposition to this motion and requested that the Court defer or deny the motion pursuant to Federal Rule of Civil Procedure 56(d) to allow plaintiffs to obtain affidavits and conduct discovery essential to justify plaintiff's opposition to the motion [Doc. 29].

The Court granted plaintiffs' Rule 56(d) motion [Doc. 52], permitting them until January 28, 2014—two weeks after the scheduled close of discovery—to file a supplemental brief in opposition to defendants' motion. The Court noted, however, that

---

[1] Angela Crumley was listed as a defendant in the original complaint and this motion, but she was not included in the amended complaint [Doc. 46], and the parties' joint status report [Doc. 53] represents that plaintiffs have dismissed Angela Crumley as a defendant.

if plaintiffs failed to file a supplemental brief, the Court would rule upon defendants' motion based upon the present record. Plaintiffs did not file a supplemental brief by January 28, 2014. The Court has thoroughly considered the arguments of the parties, the relevant documents and exhibits, and the controlling law. For the reasons set forth herein, defendants' motion is denied.

**I.     Background**

Plaintiffs are the biological children of Richard A. Pierce, Jr. ("the decedent"), who died on October 23, 2011, in Sevier County, Tennessee [Doc. 38 p. 1]. Defendants Rhonda Barnes, Joseph Crumley, and Steven Crumley are stepchildren of the decedent, defendant James Barnes is the husband of Rhonda Barnes, and defendant Pauline Rhodes is the decedent's sister [Doc. 46 ¶ 17]. Defendants allege that after being admitted to LeConte Medical Center on October 13, 2011, the decedent executed "Appointment of Health Care Agent" and "Advance Care Plan" forms, which were provided by social worker Elizabeth Robinson [Doc. 23 ¶ 6]. On these forms, Rhonda Barnes is listed as the person designated by the decedent to make health care decisions on his behalf once he is unable to do so, and the forms were purportedly signed by the decedent on October 13, 2011 [Doc. 26 pp. 3–5]. These forms were notarized by Robinson and, according to an affidavit from a medical center employee, were "prepared by personnel of Covenant Health, staff, physicians, or persons acting under the control of either" [*Id.*]. According to defendants, the decedent reviewed these forms and discussed his intentions with Rhonda Barnes and Pauline Rhodes before signing them [Docs. 23 ¶ 6, 24 ¶ 4].

2

On the Advance Care Plan form, under the section entitled "[o]ther instructions, such as burial arrangements, hospice care, etc.," the word "creamation" [sic] is written without further instruction [Doc. 26 p. 4]. Plaintiffs Sherry J. Capps and Charlotte P. DelGaicco aver that, based on their familiarity with the decedent's handwriting, he did not write "creamation" [Doc. 33 ¶ 3; Doc. 35 ¶ 3]. Moreover, they submit that the decedent never indicated to them his desire to be cremated [Doc. 33 ¶ 4; Doc. 35 ¶ 7].

On October 21, 2013, Rhonda Barnes signed a form in place of the decedent, who was apparently unable to do so, using her maiden name, Rhonda Crumley, and identifying herself as the decedent's "daughter" [Doc. 34 pp. 2–3]. This form indicated that the decedent did not have an "Advance Directive" [*Id.* at 2]. On the day after the decedent's death, an employee of LeConte Medical Center told Sherry Capps that there was no advance care directive on file for the decedent [Doc. 35 ¶ 8]. Yet, the aforementioned forms were later produced from the records of LeConte Medical Center [Doc. 26 pp. 3–4].

Following the decedent's death, Cremation Options, Inc. ("Cremation Options"), who has been dismissed as a defendant in this action, was contacted regarding the cremation of the decedent [Doc. 37-1 ¶ 3]. On October 24, 2011, Jarrett Vance ("Vance"), who was then an employee of Cremation Options, was dispatched to an address in Sevier County, Tennessee, where he met with Rhonda Barnes, Steven Crumley, and Joseph Crumley [Doc. 37-6 ¶¶ 2–3]. Vance avers that during this meeting, Rhonda Barnes told him that she was the decedent's daughter, and Steven and Joseph

3

Crumley told him that they were the decedent's sons [*Id.* ¶ 4]. Further, when Vance inquired as to whether there were any other siblings, Rhonda Barnes, Steven Crumley, and Joseph Crumley replied that there were not [*Id.*].

During this meeting with Vance, Rhonda Barnes, Steven Crumley, and Joseph Crumley signed two documents authorizing Cremation Options to arrange for the cremation of the decedent [*Id.* ¶ 5; Doc. 37-2]. In the first document, titled "Cremation and Disposition Authorization," these three defendants averred that: (1) they "are legally authorized to arrange for the cremation, processing, and final disposition of the remains of [the decedent]," (2) "all of the Decedent's other adult children have been notified of the decedent's death and none of them have expressed an objection to the cremation," (3) "I/We are aware of no objection to this cremation by any . . . child . . . or any person in the next degree of kinship to the Decedent," (4) "I/We . . . certify that I/We have the legal right to make [the cremation] authorization and agrees to hold Cremation Options, Inc. . . . harmless . . . from any liability on account of said authorization, cremation, identification, and final disposition," and (5) the obligations of Cremations Options shall be fulfilled when the decedent's remains are delivered to Rhonda Barnes [Doc. 37-2]. Plaintiffs were not present when this document was signed, and the president of Cremation Options, James Safewright, was not aware of their existence at that time [Doc. 37-1 ¶ 5]. After the cremation had been completed, Cremation Options was to deliver the decedent's remains to Rhonda Barnes in accordance with the Cremation and Disposition Authorization [Doc. 37-4 p. 4].

On October 24, 2011, the decedent was cremated [Doc. 37-1 ¶ 9]. The following day, James Barnes executed one of the decedent's checks to Cremation Options in the amount of $1,542.79, presumably as payment for the decedent's cremation [Doc. 34 p. 5]. Then, as authorized by Charlotte DelGaicco and Rhonda Barnes on October 25, 2011, Cremation Options released half of the decedent's cremated remains to each of them [Doc. 37-1 ¶ 10; Doc. 37-5]. Both Charlotte DelGaicco and Rhonda Barnes signed forms acknowledging this release on that same day [Doc. 37-5].

Plaintiffs allege that defendants are liable under Tennessee law for intentional infliction of emotional distress, negligent infliction of emotional distress, trespass upon the right to possess a body for decent burial, and conversion of cremated remains [Doc. 46]. Defendants argue that the Appointment of Health Care Agent and Advance Care Plan designated cremation as the decedent's preferred method of disposal of his body and granted Rhonda Barnes the right to control the decedent's disposition, as well as a durable power of attorney for health care pursuant to Tenn. Code Ann. § 34-6-204 [Doc. 21 pp. 2–4]. And, because she acted in accordance with the decedent's wishes and with the authority granted to her by the decedent, defendants submit that they are entitled to summary judgment [*Id.*]. James R. Barnes and Pauline Rhodes add that they are also entitled to summary judgment because they did not sign any agreement or contract for the decedent's cremation [*Id.* at 4–5].

Meanwhile, plaintiffs submit that genuine issues of material fact exist as to the genuineness and validity of the documents allegedly executed by the decedent that

5

indicate his desire that his body be cremated [Doc. 30 p. 3]. More specifically, plaintiffs submit that "the observable dissimilarity in handwriting of the word 'creamation' [sic] and the handwritten portions of the other parts of the Advance Care Plan raises a genuine issue of material fact" as to whether the decedent completed that portion of the form [*Id.*]. Along these lines, plaintiffs add that this handwriting does not match that of the decedent [Doc. 33 ¶ 3; Doc. 35 ¶ 3]. Plaintiffs further aver that the decedent never indicated to them his desire to be cremated [Doc. 30 p. 3]. In addition, they note both Rhonda Barnes and LeConte Medical Center denied the existence of an advance care directive after the forms at issue had purportedly been executed, though LeConte later produced these forms from its records [*Id.*; Doc. 26 pp. 3–4].

Moreover, plaintiffs contend that the fact that neither James Barnes nor Pauline Rhodes signed any agreement or contract concerning the decedent's cremation is not determinative of their allegations against these two defendants [*Id.* at 2]. To this end, these defendants may have conspired orally to cremate the decedent's remains and, notably, James Barnes signed the check to Cremation Options, and Pauline Rhodes was with the decedent when he purportedly executed the forms and avers that she discussed his intentions before he did so [Doc. 24 ¶ 5; Doc. 25 ¶ 6].

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

6

moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the

7

threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

Plaintiffs bring four causes of action against defendants under Tennessee law: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) trespass upon the right to possess a body for decent burial; and (4) conversion of cremated remains. Yet, defendants' motion implicates an antecedent issue as they essentially argue that plaintiffs have no right to bring their claims because the forms at issue granted Rhonda Barnes the right to control the disposition of the decedent's body.

"[I]n Tennessee, any tort claims for negligent, reckless or intentional interference with a dead body and the like can be brought only by the person or persons who have the right to control disposition of the body." *Crawford v. J. Avery Bryan Funeral Home, Inc.*, 253 S.W.3d 149, 159–60 (Tenn. Ct. App. 2007). A footnote to this sentence adds: "This would also include tort claims such as negligent and/or intentional infliction of emotional distress." *Id.* at 160 n.6.[2]

In 2010, the Tennessee Supreme Court considered a certified question from a federal district court that asked: "Who has the legal control over the disposition of the

---

[2] The *Crawford* court retreated slightly by noting that it would not go so far as to say that a family member within the right to control disposition could never bring such a claim, using the example of a case in which the deceased's remains were mutilated in front of the family. *Id.* at 160.

8

remains of a decedent when there is no surviving spouse?" *Seals v. H & F, Inc.*, 301 S.W.3d 237, 240 (Tenn. 2010). Noting that a decedent possesses primary authority over the method of his or her disposition, the Court held:

> Until our General Assembly provides more explicit guidance on the subject, we adopt the following order of priority as to the right to dispose of a dead body: (1) the decedent, pre-mortem, including through any party designated in writing by the decedent to make the decision post-mortem; (2) the spouse of the decedent; (3) adult children of the decedent; (4) parents of the decedent; (5) adult siblings of the decedent; (6) adult grandchildren of the decedent; (7) grandparents of the decedent; and (8) an adult who exhibited special care and concern for the decedent.

*Id.* at 246.

The Tennessee General Assembly soon provided such guidance. In 2012, it enacted statutes addressing the aforementioned question posed to the Tennessee Supreme Court in *Seals*. *See* Tenn. Code Ann. § 62-5-701, et seq. Yet, under the Tennessee Constitution, "[s]tatutes are presumed to operate prospectively unless the legislature clearly indicates otherwise." *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998) (citing Tenn. Const. art. 1, § 20 (stating "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made")). Because this legislation does not clearly indicate that it applies retroactively, and in light of the fact that the events at issue occurred in October 2011, the Court finds that this legislation does not apply here. Thus, the Tennessee Supreme Court's holding in *Seals* governs.

The "Appointment of Health Care Agent" and "Advance Care Plan" forms purportedly represent the decedent's wishes that (1) Rhonda Barnes make any health care

9

decisions on his behalf upon his inability to do so and (2) that his remains be cremated.[3]
Yet, even assuming that these forms constitute a valid, pre-mortem declaration of the decedent's wishes, they fail to specify whom the decedent wanted to control the disposition of his remains or possess his remains following his cremation. Plaintiffs note as much in their response, arguing that "none of the defendants' submissions support the right of any defendant to direct the ultimate *disposition* of the cremated remains" [Doc. 29 p. 2 (emphasis in original)]. Consequently, on the present record, the Court cannot conclude as a matter of law that Rhonda Barnes had the right to control the disposition of the decedent's remains, and the Court must therefore deny defendants' motion for summary judgment.

Regarding defendants' argument that James Barnes and Pauline Rhodes should be dismissed as defendants because they did not sign an agreement or contract for the

---

[3] Of note, though defendants submit that these forms constituted a durable power of attorney for health care, Tenn. Code Ann. § 34-6-201(1) defines a durable power of attorney for health care as "a durable power of attorney to the extent that it authorizes an attorney in fact to make health care decisions for the principal." And:

> A durable power of attorney is a power of attorney by which a principal designates another as the principal's attorney in fact in writing and the writing contains the words "This power of attorney shall not be affected by subsequent disability or incapacity of the principal," or "This power of attorney shall become effective upon the disability or incapacity of the principal," or similar words showing the intent of the principal that the authority conferred shall be exercisable, notwithstanding the principal's subsequent disability or incapacity.

Tenn. Code Ann. § 34-6-102. Here, the forms do not designate Rhonda Barnes as the decedent's attorney in fact and instead simply grant her the authority to make health care decisions. Thus, they are akin to an advance directive for health care executed pursuant to Tenn. Code Ann. § 68-11-1803(b), rather than a durable power of attorney.

decedent's cremation [Doc. 20 p. 2; Doc. 21 p. 4], defendants fail to cite any authority supporting the proposition that these defendants are entitled to judgment as a matter of law because they did not sign the cremation contract. Moreover, both James Barnes and Rhodes were admittedly involved to some degree in the events at issue as Barnes paid the bill for the cremation and Rhodes was present and a part of the conversation when the decedent purportedly executed the forms [Doc. 24 ¶ 5; Doc. 25 ¶ 6]. Accordingly, in light of the foregoing, the Court declines to grant summary judgment to James Barnes and Pauline Rhodes on this basis.

## IV. Conclusion

For the reasons explained herein, defendants' motion for summary judgment [Doc. 20] is hereby **DENIED**. The parties shall jointly file a report indicating their respective positions regarding whether this matter is suitable for mediation, as defined by Local Rule 16.4, within ten (10) days of the entry of this order.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE