UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SHERRY J. CAPPS; <br> CHARLOTTE P. DelGAICCO; and <br> BRIAN D. PIERCE; <br><br> Plaintiffs, <br><br> v. <br><br> CREMATION OPTIONS, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br><br> No.: 3:12-CV-545-TAV-HBG |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendant Cremation Options, Inc.'s ("Cremation Options") renewed motion for summary judgment [Doc. 86]. Plaintiffs responded in opposition to the motion and moved the Court for an opportunity to properly support or address the issue of serious mental injury pursuant to Federal Rule of Civil Procedure 56(e) [*Id.*]. The Court granted plaintiffs' motion, and the parties filed supplemental briefing related to the issue of serious mental injury [Docs. 98–101, 103]. For the reasons stated herein, the Court will grant defendant's motion for summary judgment as to plaintiffs' claims for intentional infliction of emotional distress and negligent infliction of emotional distress, and deny defendant's motion as to trespass upon a right to possess decedent's body for a decent burial.

## I. Background

Plaintiffs Sherry Capps, Charlotte DelGaicco, and Brian Pierce are the biological children of Richard A. Pierce, Jr. ("the decedent"), who died on October 23, 2011, in Sevier County, Tennessee [Doc. 38 p. 1]. Rhonda Barnes, Joseph Crumley, and Steven Crumley are the decedent's stepchildren, James Barnes is Rhonda Barnes's husband, and Pauline Rhodes is the decedent's sister ("the Family Defendants")[1] [Doc. 46 ¶ 17]. Defendant alleges that on October 13, 2011, the decedent executed "Appointment of Health Care Agent" and "Advance Care Plan" forms [Doc. 87 p. 4]. On these forms, Rhonda Barnes is listed as the person designated by the decedent to make health care decisions on his behalf once he is unable to do so, and the forms were purportedly signed by the decedent on October 13, 2011 [Doc. 87 p. 4]. These forms are notarized [Doc. 94 p. 3].

On the Advance Care Plan form, under the section entitled "[o]ther instructions, such as burial arrangements, hospice care, etc.," the word "creamation" [sic] is written [Doc. 26 at 4]. Plaintiffs Sherry J. Capps and Charlotte P. DelGaicco aver that, based on their familiarity with the decedent's handwriting, he did not write the word "creamation" [sic] [Docs. 33 ¶ 3; 35 ¶ 3; 91 p. 2]. Moreover, they submit that the decedent never indicated to them his desire to be cremated [Docs. 33 ¶ 4; 35 ¶ 7; 91 p. 2].

---

[1] While the Family Defendants have been terminated from this action [Doc. 81], for ease of reference and to be consistent with the parties' filings, the Court will still refer to them as such.

2

On October 21, 2013, Rhonda Barnes signed a form in place of the decedent, who was apparently unable to do so, using her maiden name, Rhonda Crumley, and identifying herself as the decedent's "daughter" [Doc. 34 pp. 2–3]. This form indicated that the decedent did not have an "Advance Directive" [*Id.* at 2].

Thereafter, the decedent died [Doc. 38 p. 1]. On the day after the decedent's death, an employee of LeConte Medical Center told Sherry Capps that there was no advance care directive on file for the decedent [Doc. 35 ¶ 8]. Yet, the aforementioned Advance Care Plan form was later produced from the records of LeConte Medical Center [Doc. 26 pp. 3–4].

On October 24, 2011, Jarrett Vance ("Vance"), who was then an employee of Cremation Options, was dispatched to an address in Sevier County, Tennessee, where he met with Rhonda Barnes, Steven Crumley, and Joseph Crumley in order to plan for the decedent's cremation [Doc. 87 pp. 4–5]. Vance avers that during this meeting, Rhonda Barnes told him that she was the decedent's daughter, and Steven and Joseph Crumley told him that they were the decedent's sons [*Id.* at 5]. Further, when Vance inquired as to whether there were any other siblings, Rhonda Barnes, Steven Crumley, and Joseph Crumley replied that there were not [*Id.*].

Moreover, during this meeting, Rhonda Barnes, Steven Crumley, and Joseph Crumley signed two documents authorizing Cremation Options to arrange for the cremation of the decedent [*Id.* ¶ 5]. In the first document, titled "Cremation and

3

Disposition Authorization," these three defendants averred that: (1) they "are legally authorized to arrange for the cremation, processing, and final disposition of the remains of [the decedent]," (2) "all of the Decedent's other adult children have been notified of the decedent's death and none of them have expressed an objection to the cremation," (3) "I/We are aware of no objection to this cremation by any . . . child . . . or any person in the next degree of kinship to the Decedent," (4) "I/We . . . certify that I/We have the legal right to make [the cremation] authorization and agrees to hold Cremation Options, Inc. . . . harmless . . . from any liability on account of said authorization, cremation, identification, and final disposition," and (5) the obligations of Cremations Options shall be fulfilled when the decedent's remains are delivered to Rhonda Barnes [Doc. 87 pp. 5–7]. Plaintiffs were not present when this document was signed, and the president of Cremation Options, James Safewright, was not aware of their existence at that time [Doc. 37-1 ¶ 5]. The second document addresses the policies and procedures of East Tennessee Cremation Company, to which Cremation Options delegated the task of cremating the decedent [Docs. 37-4, 87 p. 5].

On October 24, 2011, in accordance with a cremation permit obtained from the state of Tennessee, the decedent was cremated [Docs. 37-1 ¶ 9, 87 p. 7]. On October 25, 2011, James Barnes executed one of the decedent's checks to Cremation Options in the amount of $1,542.79, presumably as payment for the decedent's cremation [Doc. 34 p.

4

5].  Finally, as authorized by Charlotte DelGaicco[2] and Rhonda Barnes, Cremation Options released half of the decedent's cremated remains to each of them [Docs. 37-1 ¶ 10, 87 p. 7].  Both Charlotte DelGaicco and Rhonda Barnes signed forms acknowledging this release on October 25, 2011 [Doc. 37-5].

Plaintiffs allege that defendant is liable under Tennessee law for intentional infliction of emotional distress, negligent infliction of emotional distress, trespass upon the right to possess body for decent burial, and conversion of cremated remains [Doc. 46].  Defendant previously moved for summary judgment as to these claims [Docs. 37, 49] (hereinafter "original summary judgment motion"), which the Court granted solely on the basis of Tennessee Code Annotated §§ 62-5-707 and -708 [Doc. 52].  Plaintiffs appealed the Court's holding, asserting for the first time that those statutes were enacted after defendant's relevant conduct occurred and should not be applied retroactively.  *Capps v. Cremation Options, Inc.*, 617 F. App'x 428, 430 (6th Cir. 2015).  The Sixth Circuit agreed with plaintiffs, and remanded plaintiffs' claims against defendant.  *Id.*  Defendant thereafter renewed its motion for summary judgment [Doc. 86].

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

---

[2] This authorization was given on October 25, 2011, one day after the decedent was cremated [Doc. 37-5].

moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). The plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[M]ere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (quotations and citation omitted). Summary judgment may not be defeated "based on rumors, conclusory allegations, or subjective beliefs." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Hein*, 232 F.3d at 488.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III.     Analysis**

Plaintiffs bring four causes of action against defendant under Tennessee law: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) trespass upon the right to possess a body for decent burial; and (4) conversion of cremated remains.

In its renewed motion, defendant contends that it is entitled to summary judgment under Tennessee law because it asserts the validity of the Advance Care Plan form, wherein decedent purportedly memorializes his desire to be cremated [Doc. 86 ¶ 1]. It also contends that it did not intentionally, recklessly, or negligently inflict emotional harm on plaintiffs because it relied in good faith on the representations of Rhonda Barnes, Joseph Crumley, and Steven Crumley, and because the plaintiffs have failed to
7

submit proof of any serious harm they have suffered [*Id.* ¶ 2]. In addition, defendant asserts that plaintiffs did not have the right to disposition over decedent's body, and therefore do not have standing to bring trespass upon right to possess body or conversion claims [*Id.* ¶¶ 3–4]. Finally, defendant alleges that plaintiffs' conversion claim was abandoned on appeal [*Id.* ¶ 4].[3]

Plaintiffs submit that genuine issues of material fact exist as to the genuineness and validity of the documents allegedly executed by the decedent that indicate his desire that his body be cremated [Doc. 90 p. 2]. More specifically, plaintiffs submit that "the observable dissimilarity in handwriting of the word 'creamation' [sic] and the handwritten portions of the other parts of the Advance Care Plan raises a genuine issue of material fact" as to whether the decedent completed that portion of the form, and plaintiffs further aver that the decedent never indicated to them his desire to be cremated [Doc. 91 p. 2]. In addition, plaintiffs note that Rhonda Barnes denied the existence of an advance care directive after this form had purportedly been executed [*Id.*]. Plaintiffs also submit that Stephen Crumley's description of himself as the decedent's "step-son" on one of Cremation Options' forms and "son" on another, coupled with the difference in surnames between the decedent and Crumley males, as well as the fact that the individuals labeled "son" and "step-son" have the same surname, create a genuine issue

---

[3] Plaintiffs did not dispute this assertion in their response to defendant's motion [*see generally* Docs. 90, 91]. Upon review of the record, the Court agrees with defendant and will consider plaintiffs' conversion claim abandoned. *See Capps*, 617 F. App'x at 431 (noting that plaintiffs appealed the Court's prior ruling on defendant's original summary judgment motion as to their claims of "intentional infliction of emotional distress, negligent infliction of emotional distress, and trespass upon the right to possess a body for decent burial, but not for conversion of cremated remains").

8

of material fact as to the reasonableness of defendant's reliance on these documents and the Family Defendants' representations [Doc. 91 pp. 2–3]. Plaintiffs also state that there is a genuine dispute as to whom the decedent wanted to control the disposition of his remains following his cremation [Doc. 91 p. 4]. Plaintiffs maintain, therefore, that this issue should be submitted to a jury [*Id.* at 4–5].

In response to defendant's allegation regarding serious mental injury in its motion for summary judgment, plaintiffs moved the Court pursuant to Rule 56(e) of the Federal Rules of Civil Procedure for the opportunity to properly support or address the issue of serious emotional injury with respect to their claims for negligent and intentional infliction of emotional distress [Doc. 90 p. 5]. The Court granted plaintiffs' request [Doc. 97] and the parties filed supplemental briefs regarding the issue of serious mental injury [Docs. 98–101]. Plaintiffs each filed affidavits describing their emotional injuries, along with a supplemental brief [Docs. 98–101]. Defendant filed a response [Doc. 103].

### A. Plaintiffs' Claims for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

Plaintiffs claim that defendant intentionally and negligently caused them to suffer emotional distress. To be successful on a claim for intentional infliction of emotional distress under Tennessee law, a plaintiff must demonstrate "that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). Claims of negligent infliction of emotional distress "include the elements of a general negligence claim, which are duty,

9

breach of duty, injury or loss, causation in fact, and proximate causation," but plaintiff must also show that defendant's actions caused a serious or severe emotional injury." *Id.* at 206 (footnote omitted). "Thus, both actions for intentional infliction of emotional distress and negligent infliction of emotional distress (including all three 'subspecies' of negligent infliction: 'stand-alone,' 'parasitic,' and 'bystander') require an identical element: a showing that the plaintiff suffered a serious mental injury resulting from the defendant's conduct." *Id.*

Plaintiffs allege that, upon learning that their father was cremated, they "immediately experienced profound and severe pain, anguish, grief, sorrow, and outrage" caused primarily due to their "deeply held personal and religious convictions" regarding cremation [Docs. 98 p. 1; 99 p. 1; 100 p. 1; 101 p. 2]. They all submit that they continue to feel this "severe pain, anguish, grief, sorrow, and outrage," and that it is "rare" for them to not have "some moment of suffering" each day [Docs. 98 p. 2; 99 p. 2; 100 p. 2]. Finally, they note that they have observed each other with these similar emotions, and that plaintiff Charlotte DelGaicco continues to "weep uncontrollably" when she discusses or remembers her father's cremation [*Id.*].

Defendant asserts that plaintiffs cannot make out a claim for intentional infliction of emotional distress because plaintiff cannot establish that defendant acted intentionally, recklessly, or outrageously [Doc. 87 pp. 9–10; 103 pp. 2–3]. It states that, by no fault of its own, plaintiffs were not parties to the funeral agreement, their objections were not known to defendant, and defendant had no reason to know of their existence [*Id.*]. It

10

further submits that it relied in good faith upon the authorization that the stepchildren signed, affirming that they were legally authorized to arrange for decedent's cremation, that his other children had been notified of his death and cremation arrangements, and that there were no objections to the cremation [*Id.*].  Defendant maintains that, as a result, plaintiffs are unable to prove that defendant acted intentionally, recklessly, or outrageously in inflicting emotional harm on the plaintiffs, and thus plaintiffs cannot succeed on their claim for intentional infliction of emotional distress [*Id.*].

Defendant also states that plaintiffs cannot establish a claim for negligent infliction of emotional distress because: (1) it fulfilled its duties as a funeral establishment in arranging for the decedent to be cremated; (2) there is no evidence that it acted in bad faith in relying on the representations by Rhonda Barnes, Joe Crumley, and Stephen Crumley in the forms at issue; (3) there is no evidence that it was under a duty to independently investigate the decedent's next-of-kin in arranging for his cremation; and (4) plaintiffs have failed to prove sufficient evidence of their claimed injury [Doc. 87 pp. 11–12; 103 pp. 3–4].  It maintains that, under Tennessee law, plaintiffs must prove their serious emotional injury "by expert medical or scientific proof" [Doc. 103 p. 3].  It states that plaintiffs have failed to do this, and thus they cannot establish that their injury is serious or severe, as required in a claim for negligent infliction of emotional distress [*Id.*].

The Court will first consider the issue of serious mental injury, as it is pertinent to both intentional and negligent infliction of emotional distress.  Serious mental injury "occurs where a reasonable person, normally constituted, would be unable to adequately

11

cope with the mental stress engendered by the circumstances of the case." *Rogers*, 367 S.W.3d at 210 (internal quotation marks omitted). "'Unable to cope with the mental stress engendered' means that the plaintiff has demonstrated, by means of [certain factors] or other pertinent evidence, that he or she has suffered significant impairment in his or her daily life resulting from the defendant's extreme and outrageous conduct." *Id.* Those factors include:

> (1) evidence of physiological manifestations of emotional distress, including but not limited to nausea, vomiting, headaches, severe weight loss or gain, and the like;
>
> (2) evidence of psychological manifestations of emotional distress, including but not limited to sleeplessness, depression, anxiety, crying spells or emotional outbursts, nightmares, drug and/or alcohol abuse, and unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry;
>
> (3) evidence that the plaintiff sought medical treatment, was diagnosed with a medical or psychiatric disorder such as post-traumatic stress disorder, clinical depression, traumatically induced neurosis or psychosis, or phobia, and/or was prescribed medication;
>
> (4) evidence regarding the duration and intensity of the claimant's physiological symptoms, psychological symptoms, and medical treatment;
>
> (5) other evidence that the defendant's conduct caused the plaintiff to suffer significant impairment in his or her daily functioning; and
>
> (6) in certain instances, the extreme and outrageous character of the defendant's conduct is itself important evidence of serious mental injury.

*Id.* at 209–10.  Expert testimony is not required.[4]  *Id.* at 208.  The Tennessee Supreme Court has noted, however, that while expert testimony is not required, plaintiff's evidence must demonstrate that the mental injury is serious or severe, observing that "some degree of transient and trivial emotional distress is a part of the price of living among people," and that the law only intervenes "where the distress is so severe that no reasonable [person] could be expected to endure it."  *Miller*, 8 S.W.3d at 615 n.4 (citing Restatement (Second) of Torts § 46 cmt. j (1965)).

While the Court does not doubt that plaintiffs experienced some mental injury, plaintiffs have not raised a genuine issue of material fact as to whether their injuries qualify as "serious mental injury" as defined by Tennessee law.  Put another way, the Court finds that plaintiffs have not demonstrated that they have suffered any significant impairment in their daily lives resulting from the alleged outrageous conduct of defendant.  *Accord Rogers*, 367 S.W.3d at 210–211 (finding that plaintiff did not suffer serious mental injury where she was "very, very emotional, very tearful"); *Nesbitt v. Wilkins Tepton, P.A.*, No. 3:11-cv-0574, 2012 U.S. Dist. LEXIS 115407, at *30–32 (M.D. Tenn. Aug. 16, 2012) (finding that no serious mental injury for a plaintiff who

---

[4] Defendant cites to *Miller v. Willbanks*, 8 S.W.3d 607 (Tenn. 1999), for the proposition that plaintiff must present expert medical or scientific proof to demonstrate serious mental injury. The Court notes, however, that in *Miller*, the Tennessee Supreme Court stated it was adopting "the majority approach" that "plaintiffs normally will not be required to support their claims of serious mental injury by expert proof in order to recover" in suits for emotional distress damages. *Id*. at 615.  It explained that its decision "merely recognizes that in most cases other forms of proof may also be used," including, for example, the claimant's own testimony or that of other witnesses acquainted with the claimant, evidence of physical manifestations of distress, or evidence that plaintiff "has suffered from nightmares, insomnia, and depression," or has sought treatment for mental injury. *Id.*

13

suffered extreme stress during pregnancy, cried, and suffered from anxiety; for a plaintiff who became angry at family members, was not able to function effectively as a friend, took medication, and suffered nightmares; nor for a plaintiff who zoned out at work and would get upset and tearful when talking about work). *See also Giles v. Hometown Folks, LLC*, 61 F. Supp. 3d 749, 759 (E.D. Tenn. 2014) (holding that plaintiff did not meet this standard, despite being "upset and crying" after the incident at issue, and meeting with a counselor multiple times).

The Court thus finds that plaintiffs' claims for intentional and negligent infliction of emotional distress shall be dismissed.

### B. Trespass Upon Right to Possess Body for Decent Burial

Defendant next alleges that plaintiffs do not have standing to assert a claim for trespass upon a right to possess decedent's body for a decent burial because the forms at issue allegedly granted Rhonda Barnes the right to control the disposition of the decedent's body [Doc. 87 pp. 12–14]. This issue was previously raised by the Family Defendants in a motion for summary judgment that the Court denied [Doc. 56 pp. 8–10]. The Court finds much of its earlier reasoning applicable to the instant motion.

"[I]n Tennessee, any tort claims for negligent, reckless or intentional interference with a dead body and the like can be brought only by the person or persons who have the right to control disposition of the body." *Crawford v. J. Avery Bryan Funeral Home, Inc.*, 253 S.W.3d 149, 159–60 (Tenn. Ct. App. 2007). In 2010, the Tennessee Supreme

14

Court set out an order of priority for who shall have legal control over the disposition of the remains of a decedent, as follows:

> (1) the decedent, pre-mortem, including through any party designated in writing by the decedent to make the decision post-mortem; (2) the spouse of the decedent; (3) adult children of the decedent; (4) parents of the decedent; (5) adult siblings of the decedent; (6) adult grandchildren of the decedent; (7) grandparents of the decedent; and (8) an adult who exhibited special care and concern for the decedent.

*Seals v. H & F, Inc.*, 301 S.W.3d 237, 246 (Tenn. 2010).

The Court was careful to note that this order of priority was only adopted until the Tennessee General Assembly provided "more explicit guidance on the subject." *Id.* While the Tennessee General Assembly later enacted statutes addressing this issue, *see* Tenn. Code Ann. § 62-5-701, *et seq.*, these statutes do not apply to the instant dispute because the events at issue occurred in October 2011 and under the Tennessee Constitution, "[s]tatutes are presumed to operate prospectively unless the legislature clearly indicates otherwise," which the legislature did not. *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998) (citing Tenn. Const. art. 1, § 20 (stating "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made")). Thus, the Tennessee Supreme Court's holding in *Seals* governs.

Defendant alleges that the "Appointment of Health Care Agent" and "Advance Care Plan" forms represent the decedent's pre-mortem designations that: (1) Rhonda Barnes make any health care decisions on his behalf upon his inability to do so; and (2) his remains be cremated [Doc. 87 pp. 13–14]. As a result of these forms, defendant states

that this case falls into the first category of individuals for who possesses primary authority over the method of decedent's disposition. *Seals*, 301 S.W.3d at 346. Accordingly, defendant asserts that plaintiffs, who fall into the third category as decedent's adult children, do not have standing to bring a claim for trespass upon a right to possess a body for decent burial [Doc. 87 pp. 13–14]. Plaintiffs dispute this assertion, and allege that the Court's prior reasoning with respect to the Family Defendants applies here. They state that summary judgment should be denied because "[e]ven assuming that these forms constitute a valid, pre-mortem declaration of the decedent's wishes, they fail to specify whom the decedent wanted to control the *disposition* of his remains or possess his remains following his cremation" [Doc. 91 p. 4 (citing Doc. 56 p. 10)].

Upon review of the record, the Court agrees with plaintiffs. Plaintiffs have presented evidence to indicate that the forms at issue do not designate whom the decedent wanted to control the disposition of his remains or possess his remains following his cremation. Pursuant to Tennessee law, the only individuals who have standing to bring a claim for trespass upon a right to possess a body for decent burial are those who have the right to control the disposition of the decedents body. *Crawford*, 253 S.W.3d at 159–60. As plaintiff has presented evidence to demonstrate that there is a material question of fact with respect to who had this power, the Court cannot conclude as a matter of law that Rhonda Barnes possessed this power. As a result, summary judgment is inappropriate.

16

## IV. Conclusion

For the reasons stated herein, defendant Cremation Options' motion for summary judgment [Doc. 86] will be **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims against defendant for intentional infliction of emotional distress and negligent infliction of emotional distress will be **DISMISSED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE